UNITED STATES DISTRICT COURT **JUDGE MORAN**
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

**MAGISTRATE JUDGE COX**

| | |
|---|---|
| UNITED STATES OF AMERICA ) | No. 08 CR **08CR 646** |
| v. ) | |
| TIGRAN TOMBULYAN ) | Violations: Title 18, United States Code, Section 1344 |

**FILED**
JN AUG 1 3 2008
Aug. 13, 2008
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

### COUNT ONE

The SPECIAL MARCH 2007 GRAND JURY charges:

1. At times material to this indictment:

    a. Bank of America, TCF Bank, LaSalle Bank, Wells Fargo Bank, Washington Mutual Bank, American Express Bank, and PNC Bank were financial institutions, the deposits of which were insured by the Federal Deposit Insurance Corporation.

    b. On November 23, 2004, defendant TOMBULYAN purchased a single-family residence located at 346 S. Prairie Avenue, Mundelein, Illinois 60060 ("the Mundelein residence") for $213,000.

2. Beginning at least no later than in or around February 2005, and continuing until in or about June of 2005, in Mundelein, in the Northern District of Illinois, Eastern Division and elsewhere,

    TIGRAN TOMBULYAN,

defendant herein, knowingly devised and participated in a scheme to defraud and to obtain money from Bank of America, TCF Bank, LaSalle Bank, Wells Fargo Bank, Washington Mutual Bank, American Express Bank, and PNC Bank by means of materially false and fraudulent pretenses, representations, and promises, which scheme is further described below.

3. It was part of the scheme that defendant TOMBULYAN simultaneously applied for and obtained four home equity lines of credit from TCF Bank, Bank of America, American Express Bank/PNC Bank, and Washington Mutual Bank, each secured by the same piece of property, namely, the home located at 346 S. Prairie Avenue, Mundelein, Illinois, 60060. Defendant then further increased some of the acquired lines of credit by depositing NSF checks into them. Defendant ultimately drew from all of the lines of credit, obtained a total of approximately $747,097, and defaulted on them.

4. It was further part of the scheme that on or about on or about February 14, 2005, defendant TOMBULYAN applied over the internet for a home equity line of credit from Washington Mutual in the amount of $191,000 ("the Washington Mutual line of credit"), to be secured by the Mundelein residence.

5. It was further part of the scheme that on or about February 15, 2005, defendant TOMBULYAN applied in person for a home equity line of credit from Bank of America in Mundelein, Illinois, in the amount of $190,000, to be secured by the Mundelein residence ("the Bank of America line of credit").

6. It was further part of the scheme that on or about February 16, 2005, Tombulyan applied in person for a home equity line of credit from TCF Bank in Palatine, Illinois, in the amount of $213,000, to be secured by the Mundelein residence ("the TCF line of credit").

7. It was further part of the scheme that on or about February 16, 2005, defendant TOMBULYAN applied over the internet for a home equity line of credit from American Express Bank in the amount of $213,000, to be secured by the Mundelein residence (the "American Express line of credit").

8. It was further part of the scheme that on or about February 22, 2005, in Niles, Illinois, defendant TOMBULYAN opened a checking account with LaSalle Bank (the "LaSalle Bank account").

9. It was further part of the scheme that on or about February 23, 2005, defendant TOMBULYAN closed on the TCF line of credit, thereby obtaining a line of credit in the amount of $213,000 secured by the Mundelein residence. In the line of credit application, defendant falsely and fraudulently promised TCF Bank that that he would not sell or give anyone else an interest in the residence without written permission from the bank, and that he would keep the residence free from all other liens.

10. It was further part of the scheme that on or about February 24, 2005, defendant TOMBULYAN closed on the American Express line of credit, which had been assumed by PNC Bank, thereby obtaining a line of credit in the amount of $213,000 secured by the Mundelein residence. In the line of credit application, defendant falsely and fraudulently promised PNC Bank that he would maintain the Mundelein residence free of any liens having priority over or equal to the interest of American Express Bank/PNC Bank.

11. It was further part of the scheme that on March 1, 2005, defendant signed closing documents for the Washington Mutual line of credit in which he falsely and fraudulently promised that the Washington Mutual lien would remain superior to all other liens, that there were no matters pending that could give rise to a lien that would attach to the property or cause a loss of title or impair the title between the last abstract continuation and the recording of the Bank's loan, and that defendant had not and would not execute any instrument that would adversely affect the title or interest of the Bank.

12. It was further part of the scheme that on or about March 2, 2005, defendant TOMBULYAN closed on the Bank of America line of credit, thereby obtaining a $190,000 line of credit secured by the Mundelein residence. As part of the closing process, defendant falsely and fraudulently promised that he would maintain the property free of any liens having priority over or equal to the interest of Bank of America under its mortgage.

13. It was further part of the scheme that on or about March 9, 2005, defendant TOMBULYAN secured a line of credit from Washington Mutual, thereby obtaining a $191,000 line of credit secured by the Mundelein residence.

14. It was further part of the scheme that on March 13 and 14, 2005, defendant wrote $340,000 in checks from his LaSalle Bank checking account and caused them to be applied to his TCF line of credit. Defendant wrote these checks knowing that there were insufficient funds in the LaSalle Bank account to cover the amounts of the checks, and that these payments to the TCF line of credit would falsely increase the line of credit.

15. It was further part of the scheme that on March 18 and 19, 2005, defendant wrote $320,000 in checks from a Wells Fargo bank account he maintained in Los Angeles, California, and caused them to be applied to his Washington Mutual line of credit. Defendant knew there were insufficient funds in the Wells Fargo account to cover the amounts of these checks, and that the checks would falsely increase the Washington Mutual line of credit.

16. It was further part of the scheme that on March 23, 2005, defendant wrote $115,000 in checks from his Wells Fargo bank account and caused them to be applied to the Washington Mutual line of credit. Defendant wrote these checks knowing that there were insufficient funds in

the Wells Fargo account to cover the amounts of the checks, and that they would falsely increase the Washington Mutual line of credit.

17. It was further part of the scheme that during March of 2005, defendant fraudulently obtained a total of approximately $747,097, namely, approximately $242,159 from TCF Bank, approximately $61,000 from Bank of America, approximately $94,593 from American Express Bank/PNC Bank, and approximately $349,344 from Washington Mutual Bank. Defendant obtained these funds by drawing from the above-described lines of credit, including through ATM withdrawals and cash advances from various Las Vegas hotels and casinos.

18. It was further part of the scheme that defendant misrepresented, concealed, and hid, and caused to be misrepresented, concealed, and hidden, the purposes of and the acts done in furtherance of the scheme, and used means to avoid detection by law enforcement authorities.

19. On or about February 23, 2005, at Palatine, in the Northern District of Illinois, Eastern Division, and elsewhere,

TIGRAN TOMBULYAN,

defendant herein, knowingly executed and attempted to execute the above described scheme by submitting and causing to be submitted to TCF Bank a line of credit closing document in which he falsely promised that he would not sell or give anyone else an interest in the residence without written permission from the bank, and that he would keep the residence free from all other liens, all of which defendant TOMBULYAN knew to be materially false and fraudulent;

In violation of Title 18, United States Code, Section 1344.

## COUNT TWO

The SPECIAL MARCH 2007 GRAND JURY further charges:

1.	Paragraphs 1 through 18 of Count One of this indictment are realleged as if fully restated here.

2.	On or about February 24, 2005, at Mundelein, in the Northern District of Illinois, Eastern Division, and elsewhere,

TIGRAN TOMBULYAN,

defendant herein, knowingly executed and attempted to execute the above described scheme by submitting and causing to be submitted to American Express Bank an application for a line of credit in which he falsely promised that he would maintain the Mundelein residence free of any liens having priority over or equal to the interest of American Express Bank, which defendant knew to be materially false and fraudulent;

In violation of Title 18, United States Code, Section 1344.

## COUNT THREE

The SPECIAL MARCH 2007 GRAND JURY further charges:

1. Paragraphs 1 through 18 of Count One of this indictment are realleged as if fully restated here.

2. On or about March 1, 2005, at Lake County, in the Northern District of Illinois, Eastern Division, and elsewhere,

TIGRAN TOMBULYAN,

defendant herein, knowingly executed and attempted to execute the above described scheme by submitting and causing to be submitted to Washington Mutual Bank an application for a line of credit in which he falsely represented that there were no matters pending that could give rise to a lien that would attach to the property or cause a loss of title or impair the title between the last abstract continuation and the recording of the Bank's loan, and that defendant had not and would not execute any instrument that would adversely affect the title or interest of the Bank, all of which defendant knew to be materially false and fraudulent;

In violation of Title 18, United States Code, Section 1344.

## COUNT FOUR

The SPECIAL MARCH 2007 GRAND JURY further charges:

1. Paragraphs 1 through 18 of Count One of this indictment are realleged as if fully restated here.

2. On or about March 2, 2005, at Mundelein, in the Northern District of Illinois, Eastern Division, and elsewhere,

TIGRAN TOMBULYAN,

defendant herein, knowingly executed and attempted to execute the above described scheme by submitting and causing to be submitted to Bank of America an application for a line of credit in which he falsely promised that he would maintain the property free of any liens having priority over or equal to the interest of Bank of America under its mortgage, which defendant knew to be materially false and fraudulent;

In violation of Title 18, United States Code, Section 1344.

## COUNT FIVE

The SPECIAL MARCH 2007 GRAND JURY further charges:

1. Paragraphs 1 through 18 of Count One of this indictment are realleged as if fully restated here.

2. On or about March 13, 2005, at Niles, in the Northern District of Illinois, Eastern Division, and the Los Angeles, California area and elsewhere,

TIGRAN TOMBULYAN,

defendant herein, executed and attempted to execute the above described scheme by causing an $80,000 check drawn on the LaSalle Bank account to be applied to the TCF line of credit;

In violation of Title 18, United States Code, Section 1344.

## COUNT SIX

The SPECIAL MARCH 2007 GRAND JURY further charges:

1. Paragraphs 1 through 18 of Count One of this indictment are realleged as if fully restated here.

2. On or about March 13, 2005, at Niles, in the Northern District of Illinois, Eastern Division, and the Los Angeles, California area and elsewhere,

TIGRAN TOMBULYAN,

defendant herein, executed and attempted to execute the above described scheme by causing a $130,000 check drawn on the LaSalle Bank account to be applied to the TCF line of credit;

In violation of Title 18, United States Code, Section 1344.

## COUNT SEVEN

The SPECIAL MARCH 2007 GRAND JURY further charges:

1. Paragraphs 1 through 18 of Count One of this indictment are realleged as if fully restated here.

2. On or about March 14, 2005, at Niles, in the Northern District of Illinois, Eastern Division, and the Los Angeles, California area and elsewhere,

TIGRAN TOMBULYAN,

defendant herein, knowingly executed and attempted to execute the above described scheme by causing a $130,000 check drawn on the LaSalle Bank account to be applied to the TCF line of credit;

In violation of Title 18, United States Code, Section 1344.

## **FORFEITURE ALLEGATION**

The SPECIAL MARCH 2007 GRAND JURY further charges:

1.   The allegations contained in Counts One through Seven of this Indictment are realleged and incorporated herein by reference for the purpose of alleging forfeiture pursuant to Title 18, United States Code, Section 982.

2.   As a result of his violations of Title 18, United States Code, Section 1344, as alleged in the foregoing indictment,

### TIGRAN TOMBULYAN,

defendant herein, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 982(a)(2), any and all right, title, and interest he may have in any property, real and personal, constituting, and derived from, proceeds obtained, directly and indirectly, from bank fraud in connection with the victim banks, namely, a total of approximately $747,097, that is, approximately $242,159 from TCF Bank, approximately $61,000 from Bank of America, approximately $94,593 from American Express Bank/PNC Bank, and approximately $349,344 from Washington Mutual Bank, which property is subject to forfeiture pursuant to Title 18, United States Code, Section 982.

3.   The interest of the defendant subject to forfeiture pursuant to Title 18, United States Code, Section 982, includes: all money and other property that was the subject of each transaction; constituted and was derived from the proceeds of each transaction and was obtained, directly and indirectly, as a result of those violations, including but not limited to approximately $747,097.

4.   If any of the property subject to forfeiture and described above, as a result of any act or omission of the defendant:

  (a)  Cannot be located upon the exercise of due diligence;

  (b)  Has been transferred or sold to, or deposited with, a third party;

  (c)  Has been placed beyond the jurisdiction of the Court;

  (d)  Has been substantially diminished in value; or

  (e)  Has been commingled with other property which cannot be divided without difficulty,

the United States of America shall be entitled to forfeiture of substitute property under the provisions of Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b)(1).

  All pursuant to Title 18, United States Code, Section 982(a)(2)(A).


                A TRUE BILL:


                _____
                FOREPERSON


_____
UNITED STATES ATTORNEY